## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| **DOROTHY UWAKWE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **17-10558-FDS** |
| | ) | |
| **PELHAM ACADEMY and JUSTICE** | ) | |
| **RESOURCE INSTITUTE, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

## MEMORANDUM AND ORDER
## ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is an action for workplace discrimination.  Plaintiff Dorothy Uwakwe, a Nigerian-American woman, alleges that her former employers, defendants Pelham Academy and Justice Resource Institute, Inc., discriminated against her on the basis of her race and national origin.

The principal question before the Court is whether Uwakwe's discrimination claims under Title VII, 42 U.S.C. § 2000e *et seq.*, are time-barred.  Title VII claims are subject to a fairly short limitations period:  they must be filed within 90 days after the plaintiff receives a right-to-sue notice from the EEOC.  42 U.S.C. § 2000e-5(f)(1).  Here, the EEOC apparently mailed the notices on June 17, 2016.  This action was not filed until April 1, 2017, 288 days later.

Defense counsel received a copy of the notices on June 20, 2016, three days after they were mailed.  Plaintiff, and her counsel, have submitted affidavits saying that they did not receive the notices until January 3, 2017, and then only after an inquiry by counsel.  The notices were addressed properly and were not returned as undeliverable.  Plaintiff and her counsel do not

proffer any reason, plausible or not, why they might not have received the notices. They simply deny that they did.

By law, such a notice is presumed to have been received within a reasonable time after mailing, which the First Circuit has suggested is anything from three to five days. The first question presented is whether plaintiff's simple denial is enough to overcome that presumption: more precisely, whether that simple denial is sufficient to delay accrual of the limitations period. Although the First Circuit has not addressed that question, the Second and Sixth Circuits have concluded that mere denial, without more, is not enough. This Court will adopt that approach, and conclude that plaintiff is deemed to have received the notice by June 22, 2016.

The question then becomes whether the doctrine of equitable tolling should apply and toll the running of the limitations period beginning on June 22, 2016 (the presumed latest date of receipt). The answer to that question depends on whether plaintiff's counsel acted diligently under the circumstances.

As set forth below, plaintiff's counsel did little to monitor the proceeding. He did not send an e-mail or make any other written inquiry to the EEOC for more than half a year after the matter had been closed. More importantly, once he became aware that the notices had been sent, he did not act quickly to get the complaint on file; instead he simply assumed that he was entitled to a wholly new limitations period, and waited nearly three more months before filing the complaint.

Because of that lack of diligence, the limitations period will not be tolled. Accordingly, and for the reasons that follow, defendants' motion for summary judgment will be granted as to Counts 1 through 4 and 7. The remaining two counts will be dismissed for failure to state a claim.

# I.    Background

## A.    Factual Background

Dorothy Uwakwe alleges that she was employed by Pelham Academy and the Justice Resource Institute, Inc. ("JRI") beginning in April 2008.  (Compl. ¶ 10).[1]  She alleges that she was wrongfully accused of assaulting another employee.  (*Id.* ¶¶ 13-14).  Subsequently, on October 3, 2014, she was demoted from a supervisory position that paid $18 per hour to a residential counselor position that paid $12.75 per hour.  (*Id.* ¶ 13).

Uwakwe alleges that the demotion was due to discrimination based on her race and national origin and that she was constructively discharged.  (*Id.* ¶¶ 10-13).  She also alleges that she was humiliated by defendants and her co-workers and subjected to a hostile work environment because of her accent.  (*Id.* ¶¶ 11-12, 15).

The complaint asserts claims for (1) discrimination on the basis of race and national origin in violation of Title VII of the Civil Rights Act of 1964; (2) retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a), the Equal Pay Act of 1963, 29 U.S.C. § 215(a)(3), and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H, 11I; (3) hostile work environment; (4) constructive discharge; (5) intentional/reckless infliction of emotional distress; (6) breach of the implied covenant of good faith and fair dealing; and (7) wage and salary discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a), and the Massachusetts Civil Rights Act.  (*Id.* ¶¶ 19-44).

## B.    Procedural Background

On March 25, 2015, Uwakwe filed separate charges against JRI and Pelham with the

---

[1] Although the facts alleged in the complaint need not be accepted as true on a motion for summary judgment, the complaint provides some context to the present issue.

Equal Employment Opportunity Commission ("EEOC"), EEOC Charge Nos. 846-2015-09662 and 523-2015-00382 respectively. (Def. Mot. to Dismiss Ex. 1).

On June 17, 2016, the Boston Area Office of the EEOC mailed one letter and two documents titled "Dismissal and Notice of Rights." (Compl. Ex. A; Def. Mot. to Dismiss Ex. 2).[2] The letter stated: "Included with this letter is your Notice of Dismissal and Right to Sue. Following this dismissal, you may only pursue this matter by filing suit against the Respondent named in the charge within ninety (90) days of receipt of said notice. Otherwise, your right to sue will be lost." (Compl. Ex. A). The notices stated: "Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost." (Compl. Ex. A; Def. Mot. to Dismiss Ex. 2).

The letter was addressed to Uwakwe "c/o" Benneth O. Amadi, her attorney.[3] It set forth the correct and complete business address for attorney Amadi at his office in Lynn. (Compl. Ex. A at 1). The notices themselves were addressed to Uwakwe herself, with what appears to be a correct and complete address at her home in Roslindale.[4] At the bottom of the page, the notices indicated that two individuals were provided "cc" copies: (1) plaintiff's counsel Amadi, again with his correct mailing address, and (2) defense counsel, also with a correct address. (Compl. Ex. A; Def. Mot. to Dismiss Ex. 2).[5]

---

[2] It is not clear whether the letter and the two notices were mailed together as part of a single package. The letter refers to both EEOC Charge Numbers, but names only JCI as a respondent and refers to a single notice of right to sue as an enclosure. Plaintiff attached the letter and the Notice of Rights as to JCI to her complaint, but not the Notice of Rights as to Pelham. (*See* Compl. Ex. A). Defendants, however, received both notices and attached the Pelham notice to their Motion to Dismiss. (Def. Mot. to Dismiss Ex. 2).

[3] It is not clear whether copies of the letter and/or the notices were sent to Uwakwe at her home address. For present purposes, the Court will assume that they were not, and that copies were mailed only to Amadi.

[4] Uwakwe's address on both notices also matches the address she provided to the EEOC on March 18, 2015, on her two charges. (Def. Mot. to Dismiss Ex. 1 at 2, 6).

[5] The Court will assume for present purposes that only one copy of the letter was mailed to Amadi.

Defense counsel received the notices on June 20, 2016, three days after mailing. (Def. Mem. in Response to Ct. Order Ex. 1 ¶ 3).

From that point, there is no evidence in the record of any activity with respect to these claims for more than half a year.

On December 30, 2016, Uwakwe's counsel Amadi e-mailed Anthony Pino, an EEOC Enforcement Supervisor. The e-mail stated as follows: "Please cause the Notices of Right to Sue to issue in relation to the above-referenced EEOC Charge Numbers. . . . My client wants to file federal complaints and therefore requests for the Rights to Sue." (Compl. Ex. A). Pino responded on January 3, 2017: "As you can see from the attached, this matter was closed on June 17, 2016." (*Id.*). According to Uwakwe, Pino's e-mail attached only the notice related to the charge against JCI. (Pl. Mot. to Strike at 2-3 & n.2).

Amadi did not express surprise or make any protest to Pino. Nor did he follow up as to the absence of any notice concerning Pelham. Instead, on January 6, 2017, he sent the following e-mail to Pino: "Since the letter you enclosed in your email to me was alleged to have been mailed on or about June 17, 2016, but is being received today, January 3, 2017, I shall start counting the 90 days from today for the filing of my client's case in the Federal District Court." (Pl. Response to Ct. Order Ex. A).[6]

Amadi filed this action on behalf of Uwakwe on April 1, 2017—288 days after the date the notices were mailed, and 88 days after the date of Pino's e-mail.

Defendants responded by filing a motion to dismiss Counts 1, 2, 3, 4, and 7 of the

---

[6] Defendants object to the submission of the January 6 e-mail because it was not authenticated by affidavit and was submitted only after defendants pointed out that counsel had failed to react with surprise to Pino's e-mail. Because the Court converted defendants' motion to dismiss to one for summary judgment, it will not fault plaintiff's counsel for failing to introduce this evidence earlier. The Court will further assume, for present purposes, that the e-mail is authentic.

complaint as untimely; Count 5 as barred by the exclusivity provisions of the Massachusetts

Workers' Compensation Act; and Count 6 for failure to state a claim. (Def. Mot. to Dismiss at

1-2).

In response to the motion to dismiss, Uwakwe submitted an affidavit that stated, in its

entirety, as follows:

> 1. I did not personally receive any right-to-sue letter ("RTS") at all from the EEOC.
>
> 2. I was informed by my Attorney that he received a copy from the EEOC on January 3, 2017, by email.

(Aff. in Opp. to Mot. to Dismiss Ex. 1 ("Uwakwe Aff.")). Attorney Amadi also submitted an

affidavit that stated, among other things, as follows:

> 2. I received the EEOC right-to-sue- letter ("RTS") by email from the EEOC on January 3, 2017.
> . . .
>
> 6. I enquired constantly from [sic] and plaintiff did not personally receive any copy of the RTS from the EEOC at all. My office did not also receive any EEOC RTS at all prior to January 3, 2017.
>
> 7. I was contacting the EEOC Investigator who was investigating the case, and each time I was informed that they were still investigating the case; and that they had too many other cases also to attend to.
>
> 8. I was very much in contact with the EEOC and I was diligently contacting them from time to time. But when I called the investigator's line in the last week of December 2016, the recorded message indicated that she was not on duty and that Mr. Pino of the EEOC should be contacted. I called Mr. Pino of the EEOC and he was not around also; and when he did not return my call, I emailed him on or about December 30, 2016 and informed him that my client need the Right to Sue letter.
> . . .
>
> 9. Mr. Pino later replied to my email on January 3, 2017 and the email contained the RTS as an attachment.
> . . .
>
> 11. Apart from the fact that the RTS was stamped June 27, 2017 [sic], there is

> nothing to show in reality that it was received by my office or by the
> plaintiff before January 3, 2017.
>
> . . .

(Aff. in Opp. to Mot. to Dismiss ¶¶ 2-11 ("Amadi Aff.")).  Neither Uwakwe nor attorney Amadi

provided any explanation or suggestion as to any possible reason why they might not have

received the letter.

On September 1, 2017, the Court entered an order converting defendants' motion to

dismiss into a motion for summary judgment, because both parties had presented matters outside

the pleadings with respect to whether the claims were timely, and giving the parties an

opportunity to file further submissions to the Court.  Both parties filed a short response with

additional briefing.  Defendants filed an objection to Uwakwe's response, to which Uwakwe

objected in turn.

## II.     <u>Standard of Review</u>

The role of summary judgment is to "pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial."  *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822

(1st Cir. 1991) (internal quotation marks omitted).  Summary judgment is appropriate when the

moving party shows that "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Essentially, Rule 56[] mandates

the entry of summary judgment 'against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial.'"  *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir.

1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that

determination, the court must view "the record in the light most favorable to the nonmovant,

drawing reasonable inferences in his favor."  *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir.

2009).  When "a properly supported motion for summary judgment is made, the adverse party

must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256–57.

## III.    Analysis

### A.    Motion to Strike

Plaintiff has moved to strike defendants' reply brief on the grounds that it is "inundated with knowing, deliberate and deceptive misrepresentations" and a "fraud on this Court." (Pl. Mot. to Strike at 1). Specifically, plaintiff objects to the defendants' statements that "[t]he Complaint . . . was silent as to when the RTS Notices were received by [plaintiff's] counsel," and that "plaintiff conveniently ignores the fact that the EEOC issued two RTS Notices to plaintiff's counsel, not one." (*Id.* ¶¶ 1-2).

The complaint at ¶ 5 alleges that "[p]laintiff was issued with [sic] the permission and/or right to sue. See Exhibit A. Exhibit A is dated June 17, 2016, but plaintiff received it on January 03, 2017 through his [sic] attorney." (Compl. ¶ 5). The latter sentence could be read two ways—either as saying that plaintiff actually received the notice from her attorney on January 3, 2017 (without stating when the attorney received it), or as saying that plaintiff constructively received the notice on January 3, 2017 (when the notice was received by her attorney). Because of the ambiguity, the Court will not fault defendants for stating that the complaint is silent as to when the notice was received by plaintiff's counsel. However, in light of plaintiff's subsequent clarification, the Court will construe the complaint as alleging that plaintiff and her counsel first received the notice on January 3, 2017.

As to the statement that "plaintiff conveniently ignores" the second notice, plaintiff's counsel insists that he only ever received one notice (by e-mail on January 3) and that defendants

are wrong to suggest otherwise. But plaintiff seems to misunderstand defendants' point. Defendants are not suggesting that the e-mail contained two notices; they are arguing that plaintiff has not presented an explanation as to why two notices would have gone missing in the mail.[7] Indeed, plaintiff's counsel's insistence that he only received one notice by e-mail on January 3 reinforces defendants' point—that a diligent attorney who had not received either notice in the mail but was now presented with evidence that one matter had closed months earlier would have wondered where the other notice was and would have inquired as to whether that matter was also closed. That is not deceptive conduct on the part of defendants; it is a legitimate argument in their favor.

The motion to strike will therefore be denied.

## B. Defendants' Motion for Summary Judgment on Counts 1, 2, 3, 4, and 7

To proceed under Title VII of the Civil Rights Act, a plaintiff must file her complaint within ninety days of receiving a notice of the right to sue from the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 119 (1st Cir. 2009). The date that the notice is *received* starts the statutory clock. There is, however, "a presumption that, in the absence of evidence to the contrary, a notice provided by a government agency is deemed to have been placed in the mail on the date shown on the notice and received within a reasonable time thereafter." *Loubriel v. Fondo Del Seguro Del Estado*, 694 F.3d 139, 143 (1st Cir. 2012). Three to five days has been held to be a reasonable time for receipt of first-class mail. *Id.* Furthermore, notice to a plaintiff's attorney constitutes constructive notice to the plaintiff. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990); *see Loubriel*, 694 F.3d at 144. The ninety-

---

[7] As noted, the Court is assuming for present purposes that there was one mailing with two notices, not two mailings.

day deadline cannot be extended except in certain circumstances where equitable tolling applies. *See Rice v. N.E. College*, 676 F.2d 9, 10-11 (1st Cir. 1982).

Defendants have produced evidence that the Notices of Rights are dated June 17, 2016, and are properly addressed to plaintiff's attorney. The presumption of receipt—that is, that the notices were placed in the mail on June 17, 2016, and received within a reasonable time thereafter—has therefore been triggered. *See Loubriel*, 694 F.3d at 143. To rebut that presumption, plaintiff has submitted affidavits from herself and her counsel denying that they received the notices.[8]

### 1. Whether a Mere Denial of Receipt Is Sufficient to Overcome the Presumption

The first question is whether those affidavits are sufficient to rebut the presumption and create a genuine issue of material fact. The First Circuit has not faced this question directly. In *Loubriel*, the right-to-sue notice was mailed on May 8, 2009, and the plaintiff filed suit on September 29, 2009. *Loubriel*, 694 F.3d at 142. The plaintiff, in an unsworn statement of "contested material facts," stated that she received the notice "on or about September of 2009"; then, in her affidavit, she attested that the facts set forth in that statement were true to the best of her knowledge. *Id.* The First Circuit held that it "need not decide [the] vexing issue" of whether that "combination of oblique references" was sufficient to create a genuine issue of material fact, because it was undisputed that the notice was also mailed to the plaintiff's attorney and there was no evidence to rebut the presumption that the attorney had received it in a timely fashion. *Id.* at 143.

---

[8] The affidavits of plaintiff and her counsel are admissible. *See* Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out fact that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Other circuits, however, have held that "[t]he mere denial of receipt does not rebut [the] presumption" at the summary judgment stage. *Isaacson v. N.Y. Organ Donor Network*, 405 F. App'x 552, 553 (2d Cir. 2011) (first alteration in original) (quoting *Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2d Cir. 1985)). In *Isaacson*, the EEOC employee responsible for preparing the plaintiff's right-to-sue letter submitted an affidavit testifying that she had mailed the letter in accordance with office procedure. *Id.* at 553. The plaintiff countered with an affidavit that she had not received it. *Isaacson v. N.Y. Organ Donor Network*, 2009 WL 9119999, at *2 (S.D.N.Y. Dec. 30, 2009). The Second Circuit held that the mere denial was insufficient, explaining:

> Other than her denial, Isaacson has offered no evidence 'from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail.' We therefore agree with the District Court that Isaacson has failed to prove specific facts to rebut the presumption of receipt of the Right-to-Sue Letter.

*Id.* (quoting *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996)) (citation omitted).

The Sixth Circuit adopted a similar approach in *Cook v. Providence Hospital*, 820 F.2d 176 (6th Cir. 1987). There, the plaintiff contended that she had not received a notice mailed in May 1983; that she had called the EEOC in June 1984 and was told that the case was closed; and that she first received the notice in July 1985. *Id.* at 177-78. The court held:

> We hold that, although there may be a factual dispute about whether Cook received the letter, the dispute does not preclude the grant of summary judgment. There is only one reasonable conclusion that can be drawn from this record. In this case, we are confronted with overwhelming evidence that Cook received notice that her claim had been administratively denied and that she had a right to sue her employer: the EEOC mailed the Notice both to Cook and to Providence. The latter received the notice; Cook's Notice was not returned undelivered; Cook admitted that in June of 1984 she talked to an EEOC employee who told her that she 'should have received a Right to Sue.' In contrast, Cook offers only her unsubstantiated testimony that she never receive the May, 1983, Notice of Right to Sue.

> This dispute, moreover, is not material because whether or not Cook received the initial Notice of Right to Sue is not determinative. Assuming, *arguendo*, that Cook did not receive the Notice, she admits that she had actual knowledge, fully one year prior to suit, that the EECO had given her the right to sue; yet, she unjustifiably failed to pursue her rights.

*Id.* at 179. The statement that the plaintiff's denial alone was not enough to avoid summary judgment appears to be dicta, because plaintiff admitted that she had actual notice from speaking to the EEOC in June 1984, which made her 1985 action untimely. But *Cook* has subsequently been followed by the Sixth Circuit and district courts in that circuit. *Anderson v. Tenn. Valley Auth.*, 1993 WL 113730, at *4-5 (6th Cir. 1993) ("As in *Cook*, no genuine issue of material fact sufficient to defeat summary judgment is raised by Anderson's bald and unsupported denial of receipt of the notice of final decision on his individual discrimination complaint."); *Ellington v. Consolidated Biscuit Co.*, 2008 WL 3914982 (E.D. Ky. Aug. 21, 2008); *see also Hunter v. Stephenson Roofing, Inc.*, 790 F.2d 472 (6th Cir.1986) (holding that, due to the presumption of receipt, the ninety-day clock started five days after the date EEOC mailed the notice even though plaintiff submitted evidence that he had moved because it was plaintiff's responsibility to notify EEOC of change of address).

The Ninth Circuit addressed a similar issue in *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119 (9th Cir. 2007). There, the plaintiff filed her suit ninety-eight days after the right-to-sue letter was mailed by the EEOC. *Id.* at 1121. She contended that she did not know when she had actually received the right-to-sue letter, but that it "could have been delayed" and she had "gotten mail that'[d] been delayed before . . . [s]ometimes about a week." *Id.* at 1122 (alterations in original). The court held that evidence tending to show generally that mail sometimes gets delayed was insufficient to rebut the presumption that mail is received shortly after it is sent, because it "shows nothing with respect to the receipt of the right-to-sue letter specifically, nor does it suggest a routine mail failure that necessarily would affect the right-to-

sue letter." *Id.* at 1126-27.

Plaintiff points to *Hawkins v. Frank Gillman Pontiac*, 102 F. App'x 394 (5th Cir. 2004), as supporting her position that affidavits are sufficient to establish, for summary-judgment purposes, that a notice was not received. But in that case, there was additional evidence tending to show lack of receipt. First, "[t]he record [was] unclear as to the address that the EEOC intended the right-to-sue letter to be delivered because the right-to-sue letter was addressed to [plaintiff] but a hand written note on the certified mail receipt indicates that the EEOC actually attempted to mail the letter to [plaintiff's attorney]." *Id.* at 398. Furthermore, there was evidence that the notice had been returned as undeliverable and that plaintiff's attorney had changed her mailing address during the pendency of the EEOC charge. *Id.* at 396-97.

Other cases denying summary judgment similarly involved additional evidence that a notice had not been received. For example, in *Sherlock v. Montefiore Medical Center*, 84 F.3d 522 (2d Cir. 1996), the court held that evidence showing that the defendant received the notice unusually late was sufficient to create a genuine issue of material fact as to whether plaintiff also may have received the notice unusually late. *Id.* at 526. The court also noted, however, that plaintiff's affidavit stating "that she had no recollection of when she received the letter" alone was "not sufficient to rebut the presumption" that the letter had been received within three days of having been mailed. *Id.*[9] In *Schulman v. Wynn Las Vegas, LLC*, 593 F. App'x 673 (9th Cir. 2013), plaintiff's affidavit contained more than a bare allegation that he received the notice late;

_____

[9] Unlike the plaintiff in *Sherlock*, plaintiff here swears to more than a failure of recollection—she swears that she "did not personally receive any right-to-sue letter ('RTS') at all from the EEOC." (Uwakwe Decl. ¶ 1). *See Woods v. Covidien LP*, 2016 WL 2733102, *4 (D. Mass. May 10, 2016) ("Plaintiff has provided no evidence that she did not receive the right-to-sue letter in November of 2013 but, rather, explains that she cannot *recall* receiving the letter at that time."); *see also Sherlock*, 84 F.3d at 526 ("If a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach [plaintiff] by mail, the initial presumption is not dispositive.").

he testified that "he checks his mailbox daily; that he received the EEOC letter on May 24, 2012; that he documented the date of receipt; and that he delivered a copy of the letter to his attorney and informed him of the date of receipt." *Id.* at 674. *See also Cheney v Emmaus, Inc.*, 2004 WL 2237701, at *1 (D. Mass. Oct. 5, 2004) (holding that where mail to plaintiff was returned as undeliverable, the limitations period did not start running until plaintiff's attorney received the notice six months later).

The cases holding that a mere denial is insufficient to overcome the presumption do not clearly set forth the rationale for doing so. Presumably, those courts were concerned that clear proof of actual mailing or receipt is usually impossible to obtain; that the presumption of receipt exists precisely to address that problem; and that the presumption would be virtually meaningless if it could be overcome so easily. Permitting such a result would also undercut the legislative scheme, including the short limitations period, which is intended to promote the swift and fair resolution of employment discrimination disputes.[10] And, of course, a bare denial of receipt is easy to fabricate and nearly impossible to rebut.

Put simply, a statute of limitations that can be defeated so easily provides little limitations protection at all. Moreover, any genuine issue of unfairness can be addressed by the doctrine of equitable tolling, which permits the court to toll the limitations period when necessary to avoid injustice.

---

[10] Congress's decision to enact a very short statute of limitations in Title VII cases reflects a legislative judgment as to the importance of the expeditious filing of discrimination complaints. As the Third Circuit has observed:

> Congress has expressed the limitations bar [in Title VII cases] not in months or years, but in days. . . . Implicit in this legislation is a policy that there should be no delay in employment discrimination cases. It is a recognition that memories may fail in the workplace in recalling the minutia of what was said and what was done.

*Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 775 (7th Cir. 1995).

The approach of the Second and Sixth Circuits is sensible, but it is not without its problems. An affidavit—even a bare-bones denial—is a form of evidence. An affidavit denying receipt is therefore evidence disputing a material fact; normally, such evidence is sufficient to defeat summary judgment. Furthermore, to the extent that such a denial is inherently implausible or incredible, it presents a question of credibility that would normally be reserved for the jury.

It is true that a defendant is put in a difficult position if a plaintiff and her counsel deny receipt, and the presumption disappears: it is almost impossible to prove that it *did* receive it, and therefore the simple denial effectively becomes conclusive proof. But the reverse is also true. If the EEOC incompetently fails to mail the notice—or if the post office incompetently fails to deliver it—the plaintiff can do little more than deny receipt. *See Cook*, 820 F.2d at 179 n.3 ("We recognize the difficult situation in which an addressee is placed: what evidence, other than her denial of receipt, is available to rebut the presumption that a letter is received? Nonetheless, on these facts, we believe Cook's denials are not sufficient to support a reasonable conclusion that the letter was not received."). A plaintiff with a meritorious case could thus be barred through no fault of her own.

There is no perfect way to reconcile those competing considerations. On the one hand, the approach of the Second and Sixth Circuits—that the mere denial of receipt, without more, is insufficient to overcome the presumption—is both sensible and practical. The purpose of the presumption is to resolve disputes of this very nature, where neither party can prove or disprove mailing or receipt. And to hold otherwise is to invite abuse: it is tantamount to permitting a plaintiff to select the date the limitations period begins to run by the single expedient of a bare-bones denial. At a minimum, it would tend to encourage factual disputes as to when a notice was received. *See Irwin*, 498 U.S. at 93 (explaining, after holding that receipt by an attorney

constituted sufficient notice to the client, that "[t]he practical effect of a contrary rule would be to encourage factual disputes about when actual notice was received, and thereby create uncertainty in an area of the law where certainty is much to be desired"). On the other hand, there is a potential for injustice in that approach, and it could produce unfair results under some circumstances if equitable tolling is not employed.[11]

In any event, this Court will follow the approach of the Second and Sixth Circuits. It accordingly concludes that plaintiff here is deemed to have received the notices no later than June 22, 2016.[12] The question then becomes whether the limitations period should be deemed to have expired ninety days later, or whether principles of equitable tolling should apply.

### 2.    Whether Equitable Tolling Should Apply

The doctrine of equitable tolling is available "'in exceptional circumstances' to extend the statute of limitations." *Vistamer, Inc. v. Fagundo-Fagundo*, 430 F.3d 66, 71 (1st Cir. 2005) (quoting *Neverson v. Farquharson*, 366 F.3d 32, 40 (1st Cir. 2004)). Equitable tolling is generally applicable where "circumstances beyond the plaintiff's control precluded timely filing," *Monrouzeau v. Asociación Del Hosp. Del Maestro., Inc.*, 153 F. App'x 7, 8 n.1 (1st Cir. 2005), or plaintiff was "materially misled into missing the deadline," *Ortega Candelaria v. Orthobiologics LLC*, 661 F.3d 675, 680 (1st Cir. 2011). "It is a 'sparingly invoked doctrine' that is 'used to excuse a party's failure to take an action in a timely manner, where such failure was caused by circumstances that are out of his hands.'" *Ortega Candelaria*, 661 F.3d at 679

---

[11] Disputes concerning the physical receipt of a mailed notice would be eliminated by the use of electronic technology. Indeed, it is somewhat surprising that the EEOC apparently continues to employ a system of mailing notices, instead of sending them electronically, which presumably would reduce costs and virtually eliminate this very type of dispute.

[12] June 22, 2016, is five days after the notices were mailed. The First Circuit has stated that "a reasonable time may encompass anything from three to five days." *Loubriel*, 694 F.3d at 143. It makes no difference to the analysis of this case whether plaintiff is assumed to have received the notice on June 20 or June 22.

(quoting *Dawoud v. Holder*, 561 F.3d 31, 36 (1st Cir. 2009)). "[E]quitable tolling is reserved for exceptional cases," and "[f]ederal courts should not apply equitable tolling liberally to extend time limitations in discrimination cases." *Chico-Velez v. Roche Prods., Inc.*, 139 F.3d 56, 58-59 (1st Cir. 1998). Importantly, "equitable tolling is unavailable where a party fails to exercise reasonable diligence." *Benitez-Pons v. Puerto Rico*, 136 F.3d 54, 61 (1st Cir. 1998); *see also Abraham*, 553 F.3d at 119.

The issue of diligence here has two components. The first concerns the period between June 22, 2016 (when plaintiff is deemed to have received the notices), and December 30, 2016 (when plaintiff's counsel e-mailed the EEOC asking for issuance of the notices to right to sue). By December 30, 2016, more than 21 months had elapsed since the time the original charges were filed with the EEOC. Counsel for plaintiff contends that he "enquired [sic] constantly" about the status of the case, and that the "EEOC Investigator . . . informed [him] that they were still investigating the case." (Amadi Aff. ¶¶ 6-7). There is no evidence that any investigatory activity was actually occurring during that period. And counsel has produced no corroborating evidence of any inquiry at all, such as an e-mail or a letter, or an affidavit from the investigator (whom he does not identify). He apparently made no inquiry of Pino or any other EEOC supervisor for at least half a year. While he swears that he was "diligently contacting [the EEOC] from time to time," (Amadi Aff. ¶ 9), he does not allege that he called at any particular time between June 17 and December 30. Nor does he contend that he was lied to about the status of the investigation.

The second component of the diligence question concerns the period beginning on January 3, 2017, once plaintiff's counsel was informed that the case had been closed. Again, plaintiff's counsel expressed no surprise to the EEOC that he had not received any notice. Nor

did he diligently attempt to get a complaint on file as quickly as he could under the circumstances. Instead, he simply announced to the EEOC that he would "start counting the 90 days from today for the filing of my client's case in the Federal District Court." (Pl. Response to Ct. Order Ex. A). He then waited 88 days, until April 1, 2017, to file the complaint. In all, 288 days elapsed between the date of the notice (June 17, 2016) and the date of the filing of the complaint (April 1, 2017). More than two years in total elapsed between the filing of the charges with the EEOC (March 25, 2015) and the filing of the complaint (April 1, 2017).

Even where equitable tolling is available, there is a split among the courts as to how the doctrine ought to be applied. Some courts have held that once a party discovers the relevant fact that otherwise would have triggered the running of the limitations period, equitable tolling provides a reasonable period of time in which to take action. Others, however, have held that such a discovery simply triggers the running of an entirely new limitations period.

Thus, the Seventh and Third Circuits have explicitly held that equitable tolling only provides a party with a reasonable period of time to act after the relevant fact is discovered, but does not simply restart the limitations period. *See Kren v. City of Springfield*, 1998 WL 152974, at *2 (7th Cir. Mar. 27, 1998) ("Further, under equitable tolling a court does not grant a claimant 'a fresh 300 days to file his charge once he obtains enough information to suspect discrimination; he must file his charge with the EEOC within a reasonable time.'" (quoting *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 268 (7th Cir. 1995))); *Yuan Gao v. Mukasey*, 519 F.3d 376, 378-79 (7th Cir. 2008); *see also McPherson v. United States*, 392 F. App'x 938, 945 (3d Cir. 2010) (following the Seventh Circuit). The Ninth and Eleventh Circuits have rejected that approach, holding that if a party is entitled to equitable tolling, the limitations period is stayed and begins to run again from the date on which the impediment to filing is removed. *See Cabello v.*

*Fernandez-Larios*, 402 F.3d 1148, 1155-56 (11th Cir. 2005) (holding that the "when a statute is equitably tolled, the statutory period does not begin to run until the impediment to filing a cause of action is removed"); *Socop-Gonzalez v. Immigration & Naturalization Serv.*, 272 F.3d 1176, 1193-96 (9th Cir. 2001) (en banc) (also rejecting the Seventh Circuit's approach).

All the courts to have considered the issue seem to agree that a party's behavior following the removal of an impediment to suit can factor into the analysis of whether a party was sufficiently diligent to merit equitable tolling in the first place. *In re Milby*, —F.3d—, 2017 WL 5586044, at *4 (9th Cir. Nov. 21, 2017) ("*Socop-Gonzalez's* 'stop-clock' holding remains the law in our circuit and applies here. That rule prohibits courts from constraining litigants to a judicially imposed filing window, and warns against imposing additional diligence requirements on recipients of equitable tolling. Courts may, however, consider a petitioner's diligence, after an extraordinary circumstance has been lifted, as one factor in a broader diligence assessment." (quoting *Gibbs v. Legrand*, 767 F.3d 879, 891-92 (9th Cir. 2014))); *Adkins v. Warden*, 354 F. App'x 564, 566 (2d Cir. 2009); *Amini v. Oberlin College*, 259 F.3d 493, 501-02 (6th Cir. 2001).

Here, the diligence of plaintiff's counsel in the period from June 22 to December 30, 2016, is certainly doubtful. Surely diligent counsel would have questioned the long delay and lack of activity, and made inquiries with the EEOC.[13] Counsel contends only that he spoke to an EEOC investigator at unspecific times during the pendency of the claim, who told him that the matter was still under investigation. Again, however, there was no apparent investigative activity occurring at the time, and no affidavit from the investigator confirming that claim has

---

[13] The Court notes that, for charges filed with the EEOC on or after September 2, 2015, it is now possible to check the status of the case on the Internet. *Public Portal*, U.S. EQUAL EMP'T OPPORTUNITY COMM'N, https://publicportal.eeoc.gov/portal/EEOC/CheckChargeStatusIMS.aspx (last visited Dec. 7, 2017). The charges in this matter were filed on March 25, 2015.

been submitted to the Court. There is no evidence that counsel made any effort to contact any EEOC supervisor or official, and no evidence of any written inquiry as to the status of the case. It is notable that his very first e-mail to the EEOC in the record produced a reasonably prompt response, informing him that the matter had been closed.

If the only delay were the period from June 22, 2016 (the date of presumed receipt of the notice) to January 3, 2017 (the date plaintiff's counsel contends he actually received the notice), the question of whether to toll the limitations period would be a much closer call. But once counsel became aware that the case had been closed six months earlier, he did not diligently attempt to get a complaint on file at the earliest reasonable opportunity. Instead, counsel simply declared that plaintiff was entitled to a new limitations period, beginning on January 3, 2017. He then took nearly the entire limitations period—88 of 90 days—to get the complaint on file.

There appears to have been no practical reason or need for the extra delay. Plaintiff's counsel presumably had already marshalled the evidence in plaintiff's case, at least sufficiently to present it to the EEOC. He had already decided to pursue the case in federal court. (*See* Compl. Ex. A ("My client wants to file federal complaints and therefore requests for the Rights to Sue.")). Thus, once he became aware that the notices had issued, there was nothing left to do but prepare and file a complaint.[14]

This Court is inclined to agree with the approach of the Seventh and Third Circuits, that even if the matter had been equitably tolled up to January 3, 2017, at most plaintiff was entitled to a reasonable period of time to get the complaint on file, not a wholly new limitations period.[15]

---

[14] It appears that counsel never inquired as to the status of the second EEOC case, against Pelham, even after being e-mailed the notice of the right to sue with respect to JCI.

[15] A "reasonable" period may, in some cases, be the same as an entirely new statutory limitations period; the length of a reasonable period is a case-by-case determination based on all the circumstances. Here, however, the

But the Court need not decide that issue, because the question of equitable tolling should be considered in light of all the circumstances, including plaintiff's diligence before and after January 3, 2017. Taken together, counsel's failure to exercise reasonable diligence during the period leading up to December 30 and his failure to get the complaint on file within a reasonable period of time after January 3 are fatal. Accordingly, and considering the actions of plaintiff's counsel in their entirety, the Court concludes that application of the doctrine of equitable tolling is inappropriate.[16] This matter will therefore be dismissed on the basis of the statute of limitations.

### C. Defendants' Motion to Dismiss

As neither party has presented documents outside the pleadings related to Counts 5 and 6, the Court will continue to treat these claims under the motion-to-dismiss standard.[17]

#### 1. Count 5

Count 5 alleges "intentional/reckless infliction of emotional distress." (Compl. ¶¶ 34-36). It alleges that "defendants conducts against plaintiff were extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community" and that "[d]efendants' conducts caused plaintiff sleepless nights; headache; loss of appetite; [and] loss of weight." (*Id.* ¶ 36).

---

claims appear to have been relatively straightforward and simple, and requires no additional legal research or factual investigation.

[16] Another factor in the analysis of whether or not to apply equitable tolling is the prejudice to the defendant. *See Benitez-Pons*, 136 F.3d at 61. Statutes of limitations are enacted principally to protect putative defendants—memories fade, evidence is lost, and cases become increasingly difficult to defend. Here, there is no evidence that defendants have been specifically prejudiced in any way. Nevertheless, as defendants received the right-to-sue notices on June 20, 2016, they no doubt believed that the matter had been resolved, and that no further attention was required, when no complaint had been filed ninety days later.

[17] On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Defendants contend that this claim must be dismissed because the Massachusetts Workers' Compensation Act ("MWCA") is the sole remedy for common-law personal injury claims arising out of employment.  The MWCA provides that "[a]n employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right."  Mass. Gen. Laws ch. 152, § 24.  Compensable injuries include "personal injury arising out of and in the course of [the employee's] employment."  *Id.* § 26.  "[E]motional distress arising out of employment [is] a personal injury under the [MWCA]," even where such distress arises out of the employer's willful conduct.  *Foley v. Poloroid Corp.*, 381 Mass. 545, 550 (1980).

Defendants are correct that this claim is barred by the exclusivity provisions of the MWCA.  *Foley*, 381 Mass. at 550 (dismissing a claim by an employee against his employer for intentional infliction of emotional distress arising out of the employer's investigation into employee's alleged misconduct on the job); *see Green v. Wyman-Gordon Co.*, 422 Mass. 551, 558-59 (1996) (holding that plaintiff's claims against her employer for intentional and negligent infliction of emotional distress due to sexual harassment at work were barred by MWCA); *Doe v. Purity Supreme, Inc.*, 422 Mass. 563, 565-66 (1996) (explaining that "intentional torts are covered by the workers' compensation act, even when they are committed by coemployees" and that the act "allows employees to recover for emotional injuries which are shown to have arisen out of and in the course of employment").

Plaintiff argues that the Massachusetts Workers Compensation Act does not apply to bar her claim, citing *O'Connell v. Chadsi*, 400 Mass. 686 (1987).  In *O'Connell*, however, the

plaintiff sought recovery from a co-worker, not her employer, and the court determined that the co-worker had not been acting in the course of his employment. The court ruled that the MWCA did not bar actions "against a fellow employee who commits an intentional tort which was in no way within the scope of employment furthering the interests of the employer." *Id.* at 689-91; *see also Anzalone v. Mass. Bay Transp. Auth.*, 403 Mass 119, 124-25 (1988) (discussing *O'Connell* and holding that "suit for an intentional tort in the course of the employment relationship is barred by the exclusivity provision of the Workmen's Compensation Act"). That is not the situation here. Although plaintiff makes no express allegations about whether the harassing statements made by her co-workers were within the scope of their employment, the claim must be dismissed regardless: either they were acting within the scope of their employment, in which case the MWCA is plaintiff's only recourse, or they were not acting within the scope of their employment, in which case plaintiff has alleged no theory by which defendants should be responsible for their conduct.

Plaintiff's claim for intentional/reckless infliction of emotional distress will therefore be dismissed.

### 2. **Count 6**

Count 6 alleges "breach of implied covenant of good faith and fair dealing and discharge against public policy." (Compl. ¶¶ 37-40). It alleges that "implied in plaintiff's employment relationship with defendants . . . is the covenant of good faith and fair dealing." (*Id.* ¶ 38). It also alleges that "based on the promises made to plaintiff by the defendants at the time of her hiring and employment . . . plaintiff intended to work for a long time and up-to her retirement age in her employment with the defendants." (*Id.* ¶ 39). It further alleges that "discrimination is against public policy." (*Id.* ¶ 40).

As an initial matter, the complaint alleges no specific promises made to plaintiff that

might lead her to believe she was promised work until retirement. As to the implied covenant of good faith and fair dealing, "[i]n the context of employment, employers . . . have been held liable for breach of the implied covenant of good faith and fair dealing only in circumstances when an at-will employee has been terminated in bad faith." *Ayash v. Dana-Farber Cancer Institute*, 443 Mass. 367, 386 (2005); *see also Siles v. Travenol Labs., Inc.*, 433 N.E.2d 103, 106 (Mass. App. Ct. 1982). Here, plaintiff alleges that the reason for her demotion and constructive discharge was pretextual, that in fact she was discriminated against on the basis of her race and national origin, and that that discrimination is contrary to public policy. But even if a pretextual termination is bad faith, the comprehensive statutory scheme providing remedies for employment discrimination forecloses plaintiff's claim here. In *Melley v. Gillette Corp.*, 475 N.E.2d 1227, (Mass. App. Ct. 1985), *aff'd*, 397 Mass. 1004 (1986), the plaintiff complained that "the only reason he was fired was because of his age, that there is a strong public policy against age discrimination, and that an employer's action which violates such a clear public policy is a breach of an implied covenant of good faith and fair dealing." *Id.* at 1228. But the court explained that "the public policy against age discrimination is already protected by a comprehensive legislative scheme" and so there was no reason to create a common-law remedy under the "'public policy exception' to the traditional rule governing at-will employment contracts," which refuses to recognize a remedy unless "there is no other way to vindicate such public policy." *Id.* at 1228-29. The same is true of claims for discrimination on the basis of race or national origin. *See* Mass. Gen. Laws ch. 151B; *Charland v. Muzi Motors, Inc.*, 417 Mass. 580 (1994).

Plaintiff's claim for violation of the covenant of good faith and fair dealing will therefore also be dismissed.

**IV.** **Conclusion**

For the foregoing reasons, plaintiff's motion to strike defendants' reply is DENIED.

Defendants' motion for summary judgment on counts 1, 2, 3, 4, and 7 is GRANTED, and

defendants' motion to dismiss counts 5 and 6 is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: December 11, 2017                    United States District Judge